SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into between and among (1) the United States of America, acting through the United States Department of Justice and on behalf of the United States Department of Commerce (collectively the "United States"); (2) Omega Protein Corporation ("OPC") and Omega Protein, Inc. ("OPI") (collectively "Omega"); and (3) Keland O. Harrison (the "Relator") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

RECITALS

A.  Omega, based in Houston, Texas, is a leading domestic producer of Omega-3 rich fish oil, protein-rich specialty fishmeal, and organic fish solubles for livestock and aquaculture feed manufacturers. At all times relevant to this Agreement and the Civil Action (defined *infra*), OPI was a subsidiary of OPC, and OPI operated a fleet of fishing vessels that harvested menhaden and delivered their catch to processing facilities, including one near Reedville, Virginia, wherein the fish catch was processed in order to produce fish oil, fish solubles, and specialty fish meals for sale to the public.[1]

B.  On November 5, 2009, the United States approved a $10,000,000 Fisheries Finance Program ("FFP") loan to Omega Protein, Inc. that was guaranteed by Omega Protein Corporation (the "FFP loan"). The FFP is administered by the National Oceanic and Atmospheric Administration ("NOAA"), an agency within the United States Department of Commerce. As a condition for the loan, in March 2010, Omega certified that it was in compliance with environmental laws. Further, Omega executed a Certification and

---

[1] In October 2017, OPC entered into a merger agreement with Cooke, Inc. ("Cooke"), a privately held Canadian company, and Alpha Merger Sub., Inc., a wholly owned U.S. subsidiary of Cooke. OPC and OPI survived this transaction as wholly owned subsidiaries of Cooke. In addition, OPC concurrently entered into a purchase and sale agreement with Alpha VesselCo Holdings, Inc. ("VesselCo"), a newly created U.S. corporation. This agreement transferred ownership of OPI's vessels to VesselCo, but the fish processing facilities remain under OPI's control. These transactions fully closed on December 19, 2017.

EXHIBIT 1

Indemnification Agreement Regarding Environmental Matters on May 25, 2010. Omega repaid the FFP loan in full by November 2015.

    C.    On March 16, 2016, Keland O. Harrison filed a *qui tam* action in the United States District Court for the Western District of Louisiana captioned *United States ex rel. Harrison v. Omega Protein Corp. and Omega Protein, Inc.*, Civil Action No.16-cv-00359 (Under Seal), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action"). Relator alleged in the Civil Action that Omega knowingly made false representations regarding its compliance with environmental laws to induce the government to approve the FFP loan. The Civil Action also included claims for violations of the Act to Prevent Pollution from Ships, 33 U.S.C. §§ 1901 *et seq.*, the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, and Louisiana's Environmental Whistleblower Statute, La. Rev. Stat. 30:2027 (collectively, the "Non-FCA Claims").

    D.    The United States contends that it has certain civil claims against Omega arising from Omega's certification of compliance with federal environmental laws in 2010 in order to obtain the FFP loan despite later admitting and pleading guilty to: (1) the discharge of bail water, a pollutant, into waters of the United States without a permit in violation of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1319 (c)(2)(A) from May 2008 through December 2010; and (2) the discharge of a harmful quantity of oil into waters of the United States in violation of the Clean Water Act, 33 U.S.C. §§ 1321(b)(3) and 1319 (c)(2)(A) from April 2009 through September 2010. That conduct is referred to below as the "FCA Covered Conduct."

    E.    This Settlement Agreement is neither an admission of liability by Omega nor a concession by the United States or the Relator that their claims are not well founded.

F. Omega denies the United States has civil claims against Omega arising from Omega's certification of compliance with federal environmental laws in 2010 in order to obtain the FFP loan, and denies Relator's allegations in the Civil Action, as set forth in Paragraph C.

G. Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement and to Relator's reasonable expenses, attorneys' fees, and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the Civil Action, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. Omega shall pay to the United States One Million Dollars ($1,000,000.00) (the "Settlement Amount"), of which $0.00 is restitution, by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Western District of Louisiana no later than ten (10) business days after the Effective Date of this Agreement.

2. Conditioned upon the United States' receipt of the Settlement Amount from Omega, and as soon as feasible after receipt, the United States shall pay $200,000.00 to Relator by electronic funds transfer.

3. Omega agrees to pay Relator $375,000.00 for expenses, and attorneys' fees and costs, and for Relator's claims under La. Rev. Stat. 30:2027, such payment is to be made by electronic funds transfer pursuant to written instructions to be provided by the undersigned counsel for Relator, not more than ten (10) business days after the Effective Date of this Agreement.

4. Subject to the exceptions in Paragraph 6 (concerning excluded claims) below, and conditioned upon Omega's full payment of the Settlement Amount, the United States releases

3

Omega together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors and assigns of any of them from any civil or administrative monetary claim the United States has for the FCA Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

5. In consideration of the obligations of Omega in this Agreement, and conditioned upon Omega's full payment of the amounts specified in Paragraphs 1 and 3 above, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, fully and finally releases Omega together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former owners; affiliates; directors, officers, employees, and attorneys; and the corporate successors, agents, and assigns of any of them from any claims, causes of action, liabilities, losses and damages (including, but not limited to, attorneys' fees, costs, and expenses of every kind and however denominated) arising out of any conduct, event, matter, or thing whatsoever occurring prior to the Effective Date of this Agreement, including but not limited to, any civil monetary claim that Relator has to the Civil Action, the FCA Covered Conduct, the Non-FCA Claims, and the investigation, litigation, and resolution thereof, or arising under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs.

6. Notwithstanding the releases given in Paragraphs 4 and 5 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

  c. Except as explicitly stated in the Agreement, any administrative liability, including the suspension and debarment rights of any federal agency;

  d. Any liability to the United States (or its agencies) for any conduct other than the FCA Covered Conduct;

  e. Any liability based upon obligations created by this Agreement;

  f. Any liability of individuals; and

  g. Any liability for personal injury or property damages or for other consequential damages arising from the FCA Covered Conduct.

7. Relator, for himself, and for his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and any other applicable law.  Conditioned upon Relator's receipt of the payment described in Paragraph 2, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

8. Omega waives and shall not assert any defenses Omega may have to any criminal prosecution or administrative action relating to the FCA Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

9. Omega fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of

every kind and however denominated) that Omega has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the FCA Covered Conduct and the United States' investigation and prosecution thereof.

10. Omega, together with its current and former parent corporations; direct and indirect subdivisions; brother or sister corporations; divisions; current or former owners; affiliates; directors, officers and employees; and the corporate successors, agents, and assigns of any of them, fully and finally releases the Relator, and his heirs, successors, attorneys, agents and assigns, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Omega has asserted, could have asserted, or may assert in the future against the Relator, related to the Civil Action, the FCA Covered Conduct, the Non-FCA Claims, and the Relator's investigation and prosecution thereof.

11. a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Omega, and its present or former officers, directors, employees, shareholders, and agents in connection with:

> (1) the matters covered by this Agreement and any related plea agreement;
>
> (2) the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;
>
> (3) Omega's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

      (4)    the negotiation and performance of this Agreement and any plea agreement;

      (5)    the payment Omega makes to the United States pursuant to this Agreement and any payments that Omega may make to Relator, including costs and attorneys' fees,

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

    b.    Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by Omega, and Omega shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

    c.    Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, Omega shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Omega or any of its subsidiaries or affiliates from the United States. Omega agrees that the United States, at a minimum, shall be entitled to recoup from Omega any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Omega's books and records and to disagree with any calculations submitted by Omega or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Omega, or the effect of any such Unallowable Costs on the amount of such payments.

12.    This Agreement is intended to be for the benefit of the Parties only.

13. Upon receipt of the payments described in Paragraphs 1 and 3, above, the United States and the Relator shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1). As to the Relator, dismissal shall be with prejudice as to all claims. As to the United States, dismissal shall be with prejudice as to causes of action released in Paragraph 4 for the FCA Covered Conduct and without prejudice as to all other claims.

14. Except as stated in Paragraph 3, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

15. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

16. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of Louisiana. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and, therefore, shall not be construed against any Party for that reason in any subsequent dispute.

17. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

18. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

19. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

20. This Agreement is binding on Omega's successors, transferees, heirs, and assigns.

21. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

22. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

23. This Agreement is effective on the date of signature of the last signatory to the Agreement (the "Effective Date"). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 12/19/18         BY: _____
                             Brandie Weddle
                             Trial Attorney
                             Commercial Litigation Branch
                             Civil Division
                             United States Department of Justice

                             and

DATED: 12/14/18         BY: _____
                             Karen J. King
                             Assistant United States Attorney
                             Western District of Louisiana

OMEGA - DEFENDANT

DATED: _____  BY: _____
                             John D. Held
                             Executive Vice President
                             General Counsel and Secretary
                             Omega Protein Corporation

DATED: _____  BY: _____
                             Gregory F. Linsin
                             Counsel for Omega Protein, Inc. and
                             Omega Protein Corporation

9

22. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

23. This Agreement is effective on the date of signature of the last signatory to the Agreement (the "Effective Date"). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: _____        BY: _____
                                Brandie Weddle
                                Trial Attorney
                                Commercial Litigation Branch
                                Civil Division
                                United States Department of Justice

                                and

DATED: _____        BY: _____
                                Karen J. King
                                Assistant United States Attorney
                                Western District of Louisiana

OMEGA - DEFENDANT

DATED: December 18, 2018    BY: _____
                                John D. Held
                                Executive Vice President
                                General Counsel and Secretary
                                Omega Protein Corporation

DATED: December 18, 2018    BY: _____
                                Gregory F. Linsin
                                Counsel for Omega Protein, Inc. and
                                Omega Protein Corporation

## KELAND O. HARRISON - RELATOR

DATED: 12-14-18    BY: _____
                       Keland O. Harrison
                       Relator

DATED: 12/17/18    BY: _____
                       Andrew M. Beato
                       Counsel for Relator

DATED: _____    BY: _____
                       Robert B. Landry, III
                       Counsel for Relator

10

## KELAND O. HARRISON - RELATOR

DATED: _____        BY: _____
                                  Keland O. Harrison
                                  Relator

DATED: _____        BY: _____
                                  Andrew M. Beato
                                  Counsel for Relator

DATED: Feb. 16, 2018          BY: _____
                                  Robert B. Landry, III
                                  Counsel for Relator